## IN THE COURT OF APPEALS OF IOWA

No. 24-0521
Filed June 5, 2024

**IN THE INTEREST OF A.A.,**
**Minor Child,**

**P.W., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Joan M. Black, Judge.

A mother appeals the termination of her parental rights to her son. **AFFIRMED.**

Kristin L. Denniger, Mount Vernon, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Sue Kirk of Arnott & Kirk Law Firm, Iowa City, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**TABOR, Presiding Judge.**

A young mother to a "medically fragile" child appeals the termination of her parental rights. She contends the State failed to prove the statutory ground for termination, it was not in her son's best interests to terminate her rights, termination will be detrimental due to their bond, and the court should have given her more time to work toward reunification. But to quote the guardian ad litem, "[t]his is serious stuff," and A.A. needs a parent who will meet his intensive medical needs. Without question, the mother loves her child. But the record establishes that she has not shown the capacity to ensure treatment for his serious health issues. So we affirm the termination order.

## I. Facts and Prior Proceedings

Seventeen-year-old P.W. gave birth to twin boys in July 2022. Their father was also a teenager.[1] The babies were born at only twenty-three weeks gestation, and one twin died after just three days. The surviving twin, A.A., remained in the hospital under intensive care until he could be discharged home in December.

Meanwhile, P.W. struggled to balance caring for A.A. and attending high school. In the month after his discharge, the parents missed or cancelled sixteen medical appointments. By late January 2023, A.A. had not gained enough weight, and was admitted to the hospital to address his failure to thrive. The court ordered a temporary removal from the parents. The Iowa Department of Health and Human Services placed A.A. in a foster home, where he has resided since.

---

[1] The court also terminated the father's parental rights, but he does not participate in this appeal.

From the start, the parents missed crucial medical appointments. Hospital staff were concerned that the parents visited A.A. only a handful of times and missed the training on how to handle his feeding tube and oxygen supply. A.A. has a long list of diagnoses, the most serious of which are cerebral palsy, bronchopulmonary dysplasia, gastroesophageal disease, and vision problems. He also has substantial physical and cognitive developmental delays.

Throughout the case, transportation and scheduling have been barriers to the parents' attendance at A.A.'s medical appointments. They often missed appointments, arrived late, or left early. P.W. felt that the foster parents scheduled appointments at inconvenient times for her. But the department stressed the importance of timely attendance. Otherwise appointments are cancelled, and A.A. has intense medical needs that the parents must manage on their own if he returns to their custody.

Most recently, the parents missed a pediatric gastroenterology appointment without explanation. The department has stressed the importance of attending appointments many times to the parents, and the court has also ordered the parents to attend every appointment. The parents voiced understanding. But the caseworker testified that their actions show they do not prioritize the appointments. Shortly before the termination hearing, the parents' attendance improved as they made efforts for at least one of them to be at every appointment. Yet they still sometimes showed up late or had to leave early.

In June 2023, the parents started having two semi-supervised visits a week with A.A. but never advanced to unsupervised interactions. The department

declined to offer unsupervised visitation until the parents were more consistent in attending A.A.'s appointments and communicating with medical providers.

In July 2023, the caseworker smelled marijuana during a home visit. There were no other signs that the parents were using. But the father had a prior drug conviction. So the court ordered the parents to provide negative drug screens before advancing to unsupervised visitation. The parents skipped all but one of the seven requested tests. P.W. tested once and was positive for marijuana.

Despite these concerns, all observers agreed visits with A.A. went well, even if the parents were not perfect in attendance. The parents came prepared with diapers and toys. And they had a clear bond with their son, who was happy and comfortable in their care. The caseworker acknowledged that the parents loved A.A. but did not believe they could be safe caregivers on their own.

After the July hearing, the court noted the parents' improved attendance at medical appointments and delayed permanency for three months. But come November, the department, the court-appointed special advocate, and the guardian ad litem (GAL) agreed that the parents made little forward progress. The court directed the State to file a termination petition.

At the time of the February 2024 termination hearing, P.W. had a stable residence at United Action for Youth, where rent was only $50 per month. She was employed full-time at a grocery store. And she had a working car, but no driver's license. She testified that if A.A. were returned to her care she would put him in daycare so that she could continue to work.

Also at the termination hearing, the caseworker explained that A.A. sees several specialists and has been admitted to the emergency room various times

for different illnesses. His continued care requires more-than-weekly medical and therapy appointments, as well as at-home treatment. Those at-home needs include overseeing his prescribed medications, monitoring oxygen intake, performing physical therapy, and responding to respiratory emergencies when they arise. Indeed, the foster mother reported A.A. has regular episodes of respiratory distress overnight, sometimes requiring trips to the emergency room. He also had eye surgery and will need follow-up treatment.

Given A.A.'s medical vulnerability, the caseworker was "not confident that the parents [were] reliable to care for all his needs." The worker also lacked confidence that the parents could resume custody within six months. Likewise, the GAL was adamant that the parents did not understand A.A.'s long-term medical needs and couldn't be consistent caregivers or effective advocates for him. Crediting those observations from the caseworker and GAL, the juvenile court found grounds to terminate the parents' rights under Iowa Code section 232.116(1)(h) (2023). P.W. appeals.[2]

## II. Discussion

### A. Statutory grounds

We analyze this termination case in three steps. *In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010). First, we decide whether the State proved a ground for termination under Iowa Code section 232.116(1). *Id.* Second, we apply the best-

---

[2] We review termination proceedings de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, but they do not dictate our result. *Id.* The State must prove the grounds for termination by clear and convincing evidence. *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

interests framework in section 232.116(2). *Id.* Third, if that framework supports the State's petition, we check whether any factors in section 232.116(3) should preclude termination. *Id.* We need not address a step that the parent does not challenge on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The court terminated P.W.'s parental rights under Iowa Code section 232.116(1)(h).[3] She now contends the State failed to show that A.A. could not be returned to her custody at the time of the hearing.[4] *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (requiring proof of statutory grounds by clear and convincing evidence); *see also In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018)

---

[3] To find termination appropriate under paragraph (h), the court must find all the following supported by clear and convincing evidence:
>    (1) The child is three years of age or younger.
>    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

[4] Our case law offers two formulations for what it means when a child "cannot be returned" to parental custody as provided in section 232.102 (discussing transfer of a child's legal custody if staying in the home would be "contrary to the welfare of the child"). Many cases cite *In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992), which quotes section 232.102(4)(a)(2)—then numbered section 232.102(5)(b)—for the proposition that custody should be transferred only if the court finds "the child cannot be protected from some harm which would justify adjudication of the child as a child in need of assistance and an adequate placement is available." *See, e.g.*, *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016). But our supreme court often describes that element as the inability to "safely return" children to their parents' care. *See, e.g.*, *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Under either formulation, the State met its burden of proof.

(applying "at the present time" in subparagraph (h)(4) to the time of the termination hearing).

P.W. points out that she has a stable home and employment and argues that "she now has a handle on A.A.'s medical needs and appointments." But she adds that "[s]he understands that the department and court may want additional monitoring . . . to ensure she continues to comply with appointments and meets A.A.'s needs."

As P.W. tacitly acknowledges, she has not done enough to instill confidence that she can meet A.A.'s health challenges without ongoing supervision. Given A.A.'s young age, delayed development, and serious medical needs, we find the State proved that P.W. could not assume his custody at the time of the termination hearing without a risk of harm. P.W. has not consistently attended her son's medical sessions, let alone scheduled and brought him to the appointments. She does not have a driver's license and depends on public transportation and other supports to get places. Since the January removal, she has not had A.A. in her care for more than a few hours semi-supervised. And she did not provide negative drug tests to advance to less supervised visits. On this record, we agree with the juvenile court that A.A. remains at risk of harm if returned to her custody. Clear and convincing evidence supports termination under paragraph (h).

## B. Delayed permanency

In the alternative, P.W. asks for more time to reunify. A delay is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Beyond arguing that she "has a handle" on A.A.'s needs, P.W. does not identify any "specific factors,

conditions, or expected behavioral changes" suggesting the need for removal from her custody would end soon. *Id.* Because the juvenile court already granted an extension and little changed, another delay in permanency is unwarranted.

### C. Best interests

For her next contention, P.W. challenges what is in A.A.'s best interests under section 232.116(2) and (3)—steps two and three of the termination analysis. But substantively she only addresses step three, citing section 232.116(3)(c). Even though P.W. does not tailor her argument to the framework in section 232.116(2), we find that termination is in A.A.'s best interests.

In assessing best interests, we consider the child's safety, the best placement for furthering his long-term nurturing and growth, and to his physical, mental, and emotional condition and needs. *I.* § 232.116(2); *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). A.A. needs consistent medical care and monitoring and regular transportation to appointments and therapists. His caregiver must have the capacity for reacting in the moment to an emergent condition and for long-term planning and advocacy as he navigates future challenges. As the GAL explained, P.W. has not shown that level of caregiving. So it is in her son's best interests to terminate P.W.'s rights and find a permanent adoptive home where his needs can be met.

### D. Statutory exception

Finally, P.W. asks for preservation of her parental rights based on her strong bond with A.A. *See* Iowa Code § 232.116(3)(c) (allowing court to avoid termination of parental rights where "termination would be detrimental to the child . . . due to the closeness of the parent-child relationship"). That exception is permissive, not

mandatory. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). And P.W. has the burden to prove that it applies here. *See A.S.*, 906 N.W.2d at 476.

P.W. asserts that her visits with A.A. go well and he looks to her for comfort and affection. Indeed, the record shows a warm connection between P.W. and A.A. The GAL described A.A. as "lighting up" when he interacts with his mother. But P.W. has not put forth evidence that severing her parental rights will harm A.A. "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [A.A.'s] developing needs." *D.W.*, 791 N.W.2d at 709. Here, P.W.'s inability to meet A.A.'s medical challenges overshadows the closeness of the parent-child relationship.

**AFFIRMED.**